We'll hear argument next in Case 10-577, Kawashima v. Holder. Mr. Whelan. Mr. Chief Justice, and may it please the Court, Mr. and Mrs. Kawashima came here to the United States as legal immigrants in 1985. And later on, they pled guilty to filing a false statement under a corporate tax return. And the issue we bring to the Court is whether that conviction under 26 U.S.C. 7206 is an aggravated felony, specifically under M-1 of the aggravated felony statute. This Court, many times, has held that it is the elements of the crime of conviction that determine whether a crime is an aggravated felony. And the elements of 7206 do not change when they go over to the immigration statute. And the terms of that statute is basically, as the Department of Justice has written in its tax manual, it is basically a tax perjury statute. If you don't tell the truth, and you know what you're saying is false, and you do it under oath, that's perjury. There are other statutes, perjury statute, which in essence says the same thing. And 18 U.S.C. 1001 is also a perjury statute. And none of them require the Justice Department or a court to determine whether fraud and deceit was an element of that crime. How would you prove fraud and deceit beyond proving that the person lied, intentionally lied? What is added to intentionally lying to convert that into fraud or deceit? It's the intention to deceive or the intention to defraud. And simply — Isn't intentionally lying, doesn't that mean that you intend to deceive? It does not, Your Honor. It doesn't? It does not mean, because you're saying a false, making a false statement, that that is evidence of an intent to deceive. Mr. Whalen, the common definition of deceit is acting, intentionally giving a false impression, intentionally giving a false impression with the intent that someone will act on it. Well, it seems that's exactly what filing a false return is. You give a false impression of what your income is with the intent that the IRS will accept it. Justice Ginsburg, the difference I'm trying to ask the Court to consider, it is the Under Section 7201, the Tax Evasion Statute, that includes both a requirement or a finding of fraud and deceit. Section 7206 does not. But why isn't it obvious what proof would you need? You submit a document because you want to convey a false impression for someone to act on. Why do you have to have anything more than that to establish deceit? Because the requirements, Your Honor, of 7206 is a finding of — of simply making a false statement. That's all that's required. The IRS, when they go after a taxpayer because they have not provided — they have not disclosed all of their income, the IRS comes in, or rather the Department of Justice, and all they have to prove is that it's false. They don't have to prove — No, that's not what I — No, and that it's willful. And that it's willful. Pardon me, Your Honor? That it's willful. Whoever willfully makes a false statement. Yes, Your Honor, but as this Court held — Well, that's not correct. No, Your Honor. Correct me if I'm wrong. It would seem to me just from reading the statute, unless we have some gloss on it, that if you think it's true but it's false from the way you were indicating, it would be a violation. That's not the way I read it. Now, have we said something other than that in later cases? If I may, Your Honor, this Court has written in the Spies case and specifically in the Bishop case that in order to be convicted of any tax offense under the Internal Revenue Code, the IRS or the Department of Justice must show it was done willfully. Willfully is not intrinsic to any — it's really intrinsic to all of the tax offenses. Willfully does not mean deceit or fraud. It simply means that the IRS cannot bring a criminal information or indictment against somebody who does something unintentionally. They must do it willfully. Willfully, as this Court defined in Bishop, is simply evidence that to commit any of these You must — it must be shown to have been done willfully. You must know that it's false when you say it. Isn't that what willfully means? You must know that the statement you're making is false. Willfully means intentionally. The false I submit— I don't want another adverb. I want you to describe what it means in the context of a statement. Doesn't it mean that you have to know that the statement you are making is false? Isn't that enough for willfully? That's what — that, yes. Okay. Now, you tell me what deceit involves beyond that. Deceit involves an intention to induce somebody to act. And what I'm arguing to this Court is that simply making a false statement under a tax perjury statute, such as we have in this case, does not mean and does not evidence an intention to deceive— I'm sorry. I'm a little bit lost here. Your definition of deceit is a false statement with an intent for the other party to rely. And you don't see that when you file your tax returns, that the government is relying on your statement to calculate your tax and to ensure that you've paid it? You don't see any reliance by the government on the truthful statements there and its collection of taxes? I do see reliance. This generally is what happens. What I'm saying is that 7206 is a perjury statute, and the government does not have to prove, and did not have to prove in this case, anything more than the income was unreported or the tax return was false. If— So it also had to prove that the government relied? Is that what you're saying? I'm saying if the government was — if the government wanted to prove fraud or deceit, that would be an element of the crime of tax evasion, 7206. I'm not even sure why, because under tax evasion, you can be charged with tax evasion merely for avoiding the payment of tax. You don't have to make a statement at all. You can take the money from the bank, withdraw it openly, and stick it in your mattress, refuse to pay, and if somehow they find your mattress, you can be charged with tax evasion. Where's the false and deceit in that? The government would have to prove fraud or deceit, because an intent to evade is the court — the government has to prove. If there's a — if there are cases that say otherwise, what does that do to your argument, of which there are many that say that the avoidance of taxes, tax payment, doesn't require an act of fraud or deceit? I would be surprised by that. Well, suppose somebody goes — he goes to a country where we have no extradition treaty, takes all his assets, and writes a postcard to the IRS every once a month saying, ha, ha, ha. I mean, why wouldn't that be an attempt to evade? That's why he went. He didn't like to pay his taxes. Then the government would bring an action under the Act. Well, 7201. Why can't you — why doesn't that violate 7201? I mean, my simple question, really, is you are a drafter. Imagine you're a drafter. And you are charged with drafting section 43. And you read — you try to get the fraud and deceit crimes, okay? So now we read 7206, 1 and 2. And you see for both of those, you can't be convicted unless you materially and willfully make a false statement. So you think, hey, I don't need a special section on that one. But then you go to 7201 and you say, oh, my God, I just thought somebody might violate this by going off to some special country, taking all his assets and writing, ha, ha, ha. Now, there's no fraud and deceit in that. He's totally open about it, but he sure has evaded it. So therefore, I better write a special section. Now, that's the simple-minded argument. But what's wrong with it? What's wrong with it, Your Honor, is that what we're talking about is the aggravated felony statute. And the issue, and it may be a narrow one for this Court, is whether a conviction under 7206, which does not require anything more than filing of a false statement without any intent to deceive or defraud, whether that is an aggravated felony. And this Court has said time and again that it is the elements of the offense that determines aggravated felony. If I may illustrate the point. If a conviction under 7206 was viewed by this Court as including fraud and deceit for the reasons many of the justices have indicated that, you know, that when somebody writes a false tax return, there's got to be deceit, what that does is that would collaterally stop a taxpayer from denying fraud and deceit in the civil collection action. So this is what Commissioner Walters was concerned about, why he filed this brief, that in effect would undermine the ability of the government to get an easy conviction based simply on a false statement. Similarly, if you are convicted of tax evasion, the tax evader cannot challenge fraud. He is — it collaterally is stopped. And as we know, that when the government goes to seek recovery, that is getting the taxes back in a civil proceeding, there's no statute of limitations. The intention of Congress is also reflected in the Internal Revenue Code section 6501, where if a person is convicted under 7206 and the government seeks to collect the unpaid taxes in an assessment proceeding, Congress particularly said that where there's a conviction under 7206, the government has the burden of proving fraud, which seems to me to be evidence, or rather the government has the duty to prove there was an attempt to evade the tax. But the conclusion is the same. If Congress had intended that proof of fraud and deceit would be in 7206, there would be no reason at all for Congress to put that in 7501. Therefore — I'm sorry. That's 26 U.S.C. 6501? Yes. To be more precise, 6501C1. Okay. That is the exceptions to the running of statute of limitations. Do we have that in the brief? I have it in my reply brief. I don't have the particular statute, but I referred to it in the reply brief. Do you have the text of it? No. I don't like counsel getting up here and talking about statutes that they've never put before us. If you're going to rely on it, we would like to have the text somewhere. Yes. I apologize for that, Your Honor. I would like to move to the second part of my argument, Your Honor, please, that the — this Court has been very clear on deciding statutes invoking the canons of instruction. And one of the important canons is that different words have different meanings. So in M1, we have loss to victim or victims in excess of $10,000. And in M2, we have a revenue loss to the government in excess of $10,000. And as this Court said in Najuan, referring to M2, this is the internal revenue provision, a correct assessment, I suggest. And that M1 deals with injuries or damage to third parties, not to the government. If you take the government's position that fraud and deceit crimes are in — fraud and deceit revenue crimes are in M1, then M2 would be worthless or pointless. Well, why? Because — it wouldn't be pointless if, in fact, an attempt to evade or defeat tax does not require a lie, does not require a willful lie. It would be adding to the — to the fraud and deceit offenses. 7201, which does not require a lie. It just requires, you know, going to Cuba and writing postcards saying, I know I owe money, I'm just not — I just ain't going to pay it. There's no fraud and deceit there. It's just what 7201 requires, an attempt to evade or defeat tax. Well, anyone who leaves the country with an intent to avoid tax is committing tax evasion. That's right. That's my very point. And that is— Without lying, without making a single lie. What I'm saying is that fraud, such as you suggest, Your Honor, is going to be an aggravated felony. It's the only one that Congress — only revenue offense, only offense under the Internal Revenue Code which Congress designated as an aggravated felony. What I'm saying is that if tax evasion were also included in M-1, then Congress would have created a useless, pointless provision. Yes. And my point is that it would not have been included within M-1. There is no way that it could be included within M-1 because it does not involve fraud or deceit. It does not involve a lie, as 7206 does. 7201 involves, I'm suggesting, Your Honor, an attempt to evade or — who willfully attempts in any manner to evade or defeat any tax. And one can do that without lying. One can do that by simply not reporting income, for example, or in Justice Breyer's more colorful example, by going to Cuba. Was it Cuba or somewhere else? I don't recognize that. Well, the point I'm trying to make, Your Honor, is that if your example is an example of fraud and deceit, which I agree it is, then a crime of fraud and deceit would not be in M-1 because it would be — it would already be captured in M-1 if the government's position was upheld. But the point that was being made is not that it's fraud and deceit. Quite the opposite. I think Justice Breyer, Justice Sotomayor, Justice Scalia have tried to get you to focus on the evasion that involves no false statement at all. Evading payment where you say nothing. What would be the crime if you simply don't pay your taxes and you don't file a return, so you're not filing anything that's false? Where would that come, the internal revenue? That would be a violation of one of the other internal revenue. Would it be evasion simply not to report your income? If the government chose to prove that it was an attempt to evade the tax, it would. The internal revenue statute and the crimes all carry the duty to — it's a legal duty we all have of fairly reporting our income, our deductions, what have you. It's the same legal duty whether it's in 7201 or 7206. The difference is in tax evasion there must be a proof of fraud or deceit. That's inherent. From the beginning of this country, or rather the beginning of the tax statutes, Congress has always separated revenue statutes from other crimes. In this case, M-1 deals with crimes involving third parties. M-2 deals with revenue loss crimes to the government of only one is an aggravated felony. I would like to reserve the remaining of my time for rebuttal. Thank you, counsel. Mr. Gannon. Mr. Chief Justice, and may it please the Court. Congress's specific reference to tax evasion in subparagraph M-2 of the INA's definition of aggravated felony did not remove all other tax offenses from the scope of subparagraph M-1. Mr. Gannon, do you think that you can commit tax evasion without committing either fraud or deceit, and are there cases that show that? The cases that we cite in our brief on page 34 that discuss this are ones that are evasion of payment cases as opposed to evasion of assessment cases. And those are instances in which somebody could accurately file a tax return and say, I owe you this amount of money, and then take steps to prevent the IRS from collecting on it, usually by removing their assets from the IRS's reach. As a factual matter, it so happens that most of those cases will often involve some concealment along the way of somebody's taking more than $10,000 in gold coins out of the country to take them to a Swiss bank. They often don't mention that when they're leaving the country. What about just not filing a return? Just not filing a return is probably not going to be enough to establish tax evasion. That would be an offense under 7203, which doesn't necessarily involve fraud or deceit. The thing that distinguishes 7201 is the need for the government to establish that there is an attempt to evade either the assessment or payment of taxation. I mean, I suppose what confuses me is that when somebody is convicted of 7201, they can't, they're stopped from contesting a civil fraud suit, isn't that right? And it also counts as a crime of moral turpitude, which involves fraud. And all of those things suggest, and I think kind of the cases as a whole suggest, that tax evasion involves fraud. Well, certainly in the context of the civil tax fraud penalty, the tax court has concluded that intent to evade is synonymous with an understatement due to fraud. And the reason why it has refused to reach that conclusion in the context of 7206 offenses, like the ones at issue in this case, is because the 7206 offense does not require the government to have proved that there was any understatement to begin with. And so there could not have been an understatement due to fraud. I'd also note that it's not at all clear that in the context of the evasion of payment cases that I was just discussing, in the context of tax evasion, that the same civil tax fraud penalty would be applicable there, because the civil tax fraud penalty is triggered by an understatement of an amount required to be shown on the return. And therefore, if it isn't, if it isn't actually something that's done in the context of filing a tax return that understates how much you owe the government, then that may well not trigger the collateral estoppel effect in the follow-on civil case. Sotomayor, are there any tax provisions that you think are not covered by the fraud and deceit section and the tax evasion section? You mean? Any tax crime. Any tax crime. Penalties, I should say. There are several tax offenses that don't necessarily involve fraud or deceit. So parts of 7202, which is the willful failure to collect tax, would not necessarily involve fraud or deceit, but it also covers failing to truthfully account for collective tax. So some of those offenses would involve fraud or deceit, and it may be divisible. 7203, which I just mentioned — Is that all under tax evasion, or that's a separate statute? That's not tax evasion. The only thing that counts as tax evasion is 7201. I cut you off. Which are the other ones? I was saying that I already mentioned to Justice Scalia that section 7203, all of these offenses I'm talking about are in 26 U.S.C. 7203, the willful failure to file a return or to pay tax or maintain records or supply information doesn't necessarily involve fraud or deceit. Parts of 7204, which is failing to furnish a statement to the employee reflecting the amount of taxes, but not — but then again, I think it could be divisible because it would also apply to furnishing a false statement to your employee. Even the misdemeanor offense under 7207 for presenting false documents might be covered for fraud or deceit, but in practice it's only used when there's a — it's only used when the tax deficiencies are de minimis, and so it would never trigger the $10,000 loss requirement that M1 would also require us to establish in order to make it an aggravated felony. Counsel, what is your answer to your friend's 6501c1 argument? Well, my answer is that I don't think it proves really any more than the collateral estoppel cases in the civil fraud context. The provision that we're talking about is not reprinted in any of the briefs, but 6501c1 is an exception that — that lifts the limitation on when the IRS can levy an assessment or seek collection, and it refers to the case of a false or fraudulent return with the intent to evade tax. And I think that in context, the reference to a false or fraudulent return with intent to evade tax is not something that clearly connotes that Congress is just speaking to 7206 offenses. It uses not only the word fraudulent, but also the intent to evade tax, which I think doesn't. Well, no, but I think your friend's argument, which has some appeal, is 7206 is fraud and false statements. And he said if you're right that that includes deceit, they wouldn't have had to add with the intent to evade tax, which is what they do in 6501c1. Well, I think if you look to c2, it also refers to a willful attempt in any manner to defeat or evade tax. So the next provision also applies more broadly to 7201 and more closely tracks the definition in 7201. So I think just like the statute of limitations provision that we note, Congress is probably using a belt and suspenders approach there, that we noted that Congress may well have had reason to be concerned that 7201 offenses would not necessarily be seen as having fraud or deceit as an element of the offense in light of this Court's decision in Chardon, which was an old case, but it had said that in the statute of limitations context that the extended statute of limitations that applied to offenses in which fraud was an element was not triggered by the statutory predecessor to tax evasion. And so to this day the statute of limitations does not apply to fraud or deceit. And so the fact that the statute of limitations was pushed away by many courts really had no power in the — I mean, tell me if I'm wrong. Well, to this day, section 6531, which is the statute of limitations provision which we do reprint in our appendix, includes provisions that refer not only generally to offenses involving fraud, but also specifically to a tax evasion offense. And so I think that the fact that Congress had already felt like it needed to be expressed to pull in not just fraud offenses, but also tax evasion offenses in 6531 makes it unsurprising that they would have pursued a similar approach here. In addition, I would — Kagan. The paradoxical thing about your argument is that, one, it makes us think that Congress was just being hypervigilant about this problem of making sure that tax evasion offenses were covered, even though tax evasion offenses almost always do involve fraud or deceit. But Congress was thinking about these hypothetical possibilities that maybe there was going to be some conviction out there that would not involve fraud or deceit. And so Congress is being super careful about this. And yet at the same time that Congress is being utterly careless, utterly clueless about the basic rule of statutory construction, which is that one does not write superfluous language. But, Justice Kagan, we don't think it's superfluous in part because of the evasion of payment cases we're talking about. But I think also if you look at the context of the rest of paragraph 43, the aggravated felony definition, you'll see that there are several other provisions that have significant overlap in them. And so subparagraph A refers to murder and rape. Those would also generally be covered in crimes of violence. In subparagraph F, the same thing is true in paragraph E-1. It pulls in various explosives offenses, including arson, destruction of property or a building by fire or explosives. That's the reference to an 844-1. Kagan. So a rule of statutory construction when it comes to this aggravated felony statute is that superfluity doesn't matter? No, Justice Kagan. I think that in context, there is a lot of overlap among the different provisions in paragraph 43 already. And I was also going to mention subparagraph K-1 and 2, which, like M-1 and M-2, are ones that have little 1, which has a generic reference there to offenses associated with managing a prostitution business. And little 2 then expressly refers to certain enumerated Federal statutes, all of which involve transporting individuals for purposes of prostitution in the case of seeking commercial advantage. And I think that virtually all of those offenses would have been included within K-1, but Congress wanted to be sure and therefore added K-2. And as Justice Breyer, I think, pointed out before, textually it had reason to think that 7206 would be picked up by fraud or deceit here. But 7206 is the lesser offense. I mean, you don't take — you don't dispute that the heavier crime is the 7201 crime, that is, evasion. It gets a more severe penalty. And when Congress picks out one tax crime and one tax crime only, why wouldn't we assume that that's what Congress meant with respect to aggravated felonies, that there's one tax crime, the most serious tax crime, that gets that label. And the M-1 provision deals with the many, many statutes that involve loss, fraud or deceit and loss to the victim. Well, the reason why we don't think that's appropriate is in part because, as I've explained, there would — there is some aspect of which M-2 is not superfluous. But more importantly, we don't think that the specific controls the general canon is triggered here, and we don't think that M-2 talks about a category of tax crimes or tax offenses more generally, because it only refers to one offense. And so the cases that Petitioners invoke here, in order to establish that there's a category that's being pulled out of M-1 are HCSC Laundrie and Leocal, those are both cases in which the statute actually identified the category of offenses in question, whether it was the cooperative hospital service organizations in HCSC Laundrie or DUI offenses in Leocal. And so here we don't have Congress actually saying tax offenses are covered by M-2. What it says is tax evasion is covered by M-2. Breyer, what about, what about, what about — suppose that didn't even exist here, 7201. Suppose we only had 7206. And the question before us was, does 7206 fit within the term aggravated felony, i.e., does it involve fraud or deceit? So we read 7206. It doesn't say anything about fraud or deceit. It's his perjury in making a false statement. So then we go look up what were the torts of fraud and deceit. And he's right. Fraud traditionally requires an intent to get another person to act. But you don't have to have that intent to violate 7206. And deceit not only involves that, it also involves the person having acted. So the traditional tort of deceit, you have to intend the acts and he has to actually have acted to his detriment. Fraud, you have the first, those the second. You read the statute, say, well, neither of those is present here, this is just perjury, which isn't good, but it's not fraud or deceit. And there we are, not in the statute. What's the answer to that? Well, I don't think that the common law definitions of fraud or deceit are the ones that this Court has always applied in the current case. No, no, not always. But here we're dealing with a very serious statute, aggravated felonies, that has terrible consequences for the persons who fall within it. And in most of these Ms and As and Bs and Cs and so forth, they refer to statutes by number. So most of it, though not all of it, is very specific. So when we read these words fraud and deceit here, why don't we say fraud and deceit means fraud and deceit. It means the traditional elements. In the criminal context, the Court has recognized that fraud offenses don't require the government to prove reliance or damages. And that makes sense. If you think about the tort action, the classic tort action, you would need to be an injured plaintiff, and therefore you would need to be able to say I relied on this to my detriment. No, no, no. You have to prove that the liar intended reliance to his detriment, which he may or may not have done. I mean, when you commit — a person who commits perjury may or may not have intended that a victim rely to his detriment, which you don't have to prove here. We do not have to prove as a separate element that there is reliance or intended reliance here. But we do need to prove what we think satisfies the plain meaning of the term deceit. We're not focusing on fraud here, but deceit, and that's the act of intentionally giving a false impression, because the elements of this offense are making and signing a return under the penalties of perjury that is false as to a material matter, that the defendant does not — Deceit can mean that. You're absolutely right. Does not believe to be true or correct, and it's all done willfully. But the tort didn't involve that. The tort involved the same element of fraud, which you don't want to rely on. That's right. And we think here Congress has used the term — Is there any evidence of what — I mean, is there any argument other than you just think that, and you could argue the other way? I mean, can we get anywhere on that? Well, I think that Congress did use the terms disjunctively here, and I think that now the plain meaning of deceit is — it sort of operates in the opposite direction of the one that you're talking about, Justice Breyer. And if you look at the way the Court in Urmian discussed the difference between an intent to defraud, an intent to deceive, it talks about an intent to defraud includes actually obtaining something, whereas an intent to deceive just involves creating a false impression. And so I think that actually the difference can run the other direction in a way that supports the definition that we're relying upon here. But going back to the point that I was trying to make about this not ruling out all tax offenses, Justice Ginsburg, I think that the reference to 7201 alone doesn't do that, nor do we think the fact that Congress then added a limiting language that said that when the revenue loss exceeds $10,000, it would satisfy M-2. Kagan. Could I make sure, Mr. Gannon, that I understand your argument about superfluity? Because when I asked whether the second provision was superfluous, you pointed me to these evasion-of-payment cases, and you cite two of them. But then you say even those cases will almost invariably involve some affirmative acts of fraud. So are there, in fact, any cases, evasion-of-payment or otherwise, which do not involve some affirmative acts of fraud? Well, I think that's as a factual matter, Justice Kagan. As a factual matter. Are there any? We were observing that as a factual matter, those evasion-of-payment cases probably would not happen without there being acts of concealment. But that doesn't mean that's a factual matter. And that's what I'm asking. As a factual matter, can you point me to any cases that do not involve affirmative acts of fraud? I don't believe that I can, but I think that to the extent that the Court is looking to the elements of the offense in 7201, if they're talking about evasion-of-payment, that will not necessarily require deceptive acts of concealment. And so that's the reason. I know, but we have a very active IRS which prosecutes lots of tax cases, and you're saying that it just never prosecutes tax cases under this section that don't involve affirmative acts of fraud. Well, we And that makes me wonder why Congress was so worried about this problem that it ignored normal rules of statutory interpretation. And I believe that the reason that they were worried could be because of the Charton decision in which this Court had already said that evasion does not necessarily require fraud, because the textual cues in 7201 are much further from fraud or deceit than those in 7206, that there's also — there would be less certainty, even assuming Congress was well aware of the established practice at the Federal level of having 7201 tax evasion cases be compared with fraud. This is also a provision that applies to State and foreign offenses. The penultimate sentence of paragraph 43 says that the term applies to an offense whether it's in violation of Federal or State law. Ginsburg. That was one of the problems that was brought up in the amicus brief, which I'm sure you've considered, that reading the M-1 to include 7206 offenses would also — would bring in offenses that are merely misdemeanors at the State and local level. It would really swell the category of tax crimes that lead to deportation. That — did Congress really mean to turn misdemeanors into aggravated felons? And then there was a very practical point made, that the government is going to be hurt more than helped by what you're seeking, because we are told that very often the government will try to make a bargain. It has a 7201 case, but it's going to be a little hard to prove, so they offer as a plea bargain 7206. And if you — if your position prevails, we are told, there will be many, many people who will say, if it's a question of whether I get thrown out of the United States, I'm going to go to trial. I'm not going to plead to something that will mean immediately, when I serve my time, I will be thrown out of the United States. Well, that may well be the consequence of the definition that Congress has adopted here of aggravated felony. And I would note that in the plea agreement that Mr. Kawashima filed in this case, paragraph 4, which is reprinted on page 117A of the Petition Appendix, says Mr. Kawashima recognizes that he may be deported as a result of his conviction. That's in his plea agreement to the 7206 offense here. And so it is, to be sure, the case that the government may well find it more difficult to secure guilty pleas when an alien is — is admitting to an offense that is an aggravated felony. But we think that that's a consequence of Congress having expanded the definition in— Breyer, to go up with — to start with Justice Ginsburg's first question, I mean, if — if this falls within it, 7206, is fraud, what about perjury? Is every perjury statute within it? And what about lying to an FBI agent? And what about lying to a government official, which is — which is, you know, there are all kinds of statutes on that one. Are all those aggravated felonies? Congress has given us two different metrics for determining whether those — whether those offenses are aggravated felonies. If they involve fraud or deceit and there is loss to the victim exceeding $10,000, then that could fall within M1. If it's a perjury statute that doesn't involve loss or a false statement to an FBI agent that doesn't involve loss— Breyer, the government's view is that, of course, you have to meet the other requirements. But as far as the words fraud or deceit is concerned, aggravated felony picks up every perjury statute, every lying statute, lying to an FBI agent, lying to this or lying to that, and has that been the consistent policy of the Immigration Service? Have they deported people where the other two conditions are fulfilled? In the beginning, when the amount of loss was $200,000, I think most perjury offenses don't involve a loss of $200,000. Breyer, but all I need are a few. I mean, I just wonder, is it the policy of the INS and the government to deport people where these other things are met, which they would be perhaps rarely, I don't know, but to deport them where the crime, the underlying crime is perjury, lying to an FBI agent, or lying to other government officials? Yes, there are such cases. Sometimes they go under S, which is the paragraph for perjury, which was actually not in existence when M-1 was added to the statute. It was added two years later. But more generally, I would like to mention that there are other tax offenses. Justice Scalia? Well, I'm confused by the $10,000 requirement. Does that have to be an element of the offense? It does not need to be an element of the offense. It's a consequence of the Court's decision in the initial one. Just a consequence of the fraud or deceit, right? It needs to be tied to the offense of conviction under this Court's decision in Nijhuan. And most instances where somebody lies to an FBI agent probably don't involve costing somebody more than $10,000, and so I think that it doesn't often come up in M-1. But many other tax offenses are prosecuted under other provisions that potentially involve fraud or deceit and can cost the government more than $10,000, and Petitioner's reading of saying that all tax offenses have to be pulled into M-2 and then only tax evasion is covered would require the Court to bifurcate all of these other provisions. And I'm thinking of, for instance, 18 U.S.C. 371. This is the provision for defrauding the United States by obstructing or impeding the IRS in its efforts to collect taxation. This Court cited 371 as one of the fraud offenses that it thought was covered by M-1 in the Nijhuan decision. The same is true for mail fraud. The criminal division, the tax division, can prosecute tax cases in which somebody mails a false tax return under 18 U.S.C. 1341, false claims under 18 U.S.C. 287, conspiracies of false claims under 286, false statements to the government. These are all provisions that are used to prosecute tax offenses. And Petitioner's reading of saying that all tax crimes are pulled out would require the Court to bifurcate these offenses and make, whether it's an aggravated felony, turn on whether the government has lost revenue as opposed to some other form of money. And we don't think that that's what Congress intended when it went to the trouble of just stating that tax evasion was expressly covered. And going back, Justice Kagan, to your concerns about superfluity, I do think it's important that in the context of this statute, there's lots of other overlap. Congress had reasons to be unsure, be in light of the Chardon decision, in light of the evasion of payment cases, because even though as a factual matter. It would be perfectly easy for Congress to write a provision which said just in case that you, you know, just in case this decision called Chardon has any effect, we mean tax evasion, too, without writing it in this way, that it's, that it appears to exclude all other tax offenses. I don't see how, if Congress wanted to exclude all other tax offenses, I think they should have put that exception in M-1. They should have said offenses involving fraud or deceit, but not tax offenses. In which the loss to the victim or victims exceeds $10,000. If Congress wanted to make an exception for tax offenses. Kagan. Well, that's just arguing against our application of the normal rule of avoiding superfluity where we can. Well, yes. I agree that the Court avoids superfluity where it can. Here we have contextual reasons to think that Congress was just trying to add more offenses to the definition rather than rule out an entire class. And I also think that there is no way to avoid the consequence of bifurcating all of those other provisions under Petitioner's reading. And so if you were to say that the reference to 7201 pulls out all revenue loss offenses, that would mean that some mail fraud cases against the government in which the government loses more than $10,000 count and some don't. Same for wire fraud. Same for false statements. Same for false claims, conspiracy to false claims. And Klein conspiracies under Section 371, which are — have a great deal of overlap with 7201. They still wouldn't — no, why? They still wouldn't be tax offenses. Well, they would be — I mean, you use the mail to avoid — still, what you're being prosecuting for is use of the mail to defraud. But the — I mean, as I understand Petitioner's argument, it is the fact that M-2 refers to revenue loss that is the thing that makes it pull in or define a category of cases involving tax offenses. And I think that if a mail fraud offense against the government involved taking — getting more than $10,000 worth of refunds from the government as opposed to getting more than $10,000 in an ill-gotten government contract or government benefits from the government, that that could still be characterized as revenue loss. Well, he put it wrong. He should have said just tax statutes are covered. Well, then I might — Then you wouldn't have to bifurcate, right? Then I just don't see how the reference to a single provision of 7201 refers to all other tax provisions and all the rest is inferred. Well, it's not just that. It's also that M-1 says loss to the victim or victims. And M-2 says the revenue loss to the government has to exceed $10,000. I mean, in one case it's the loss to the victim or victims. Why did it use parallel language? Or why did it say an offense that involves — an offense in which the loss to the victim or victims exceeds $10,000 and, one, involves fraud or deceit or, two, is described in Section 7201 of Title 26? I mean, if you read it, it seems to contrast loss to the victim or victims with revenue loss to the government. And I find it hard to regard the government as a victim in any of these cases. Well, none of the courts of appeals has had any difficulty concluding that the government is a victim when it loses more than $10,000 in a fraud case or a need in a tax evasion case. And so here there is a different phrase, but I think what's important is that 7201 doesn't define a class of revenue loss offenses. Instead, it defines a class of tax evasion offenses. It only refers to the one statute. And then in that context where there has to be a deficiency in order to — for there to be a 7201 conviction, there must be a tax deficiency, then it's natural to talk about the relevant loss as being revenue loss to the government. The phrase in M-1 is broader because it also applies to other types of frauds. And I think that the reference to 7201 alone doesn't indicate Congress is intending to read out all tax offenses. As Justice Ginsburg mentioned before, although 7201 has a 5-year maximum statute for a felony, which is longer than the 3-year maximum that applies under 7206 and some of the other tax offenses in that particular chapter of Title 26, as a practical matter, the sentencing guidelines use the same thing, the same criteria that are both tied to loss. And more importantly, a lot of these other offenses, like 371 and 1341 and 1343 in Title 18, actually have longer maximum punishments. So if the government want — has a particularly big fraud that they want to get after somebody who has a tax evasion case in which they've cost the government a great deal of money, it may choose to proceed under one of the other provisions where it can get an even greater punishment. And so just referring to 7201 as the capstone, I don't think, allows it to be a stand-in for all other tax offenses. There's a technical aspect of this case I don't understand. Maybe you can explain it. There was a question about what might be the revenue loss in the case of the wife. Why should the revenue loss be different? She's convicted of aiding and abetting. She — although it's — the statute itself refers to aiding, assisting, procuring or advising, it's not a traditional aiding and abetting statute. It doesn't require there to be an underlying primary violation. It's an independent offense. And so as it happens in this case, we all know and it's not disputed that therefore the same underlying false tax return, the same tax return that ended in 1991 for one of the corporations that Petitioners co-owned, but we just didn't have that evidence in the record. And so I think even though it's an aiding and abetting, it's not a classic aiding and abetting violation that depends on the husband's conviction. She could have been convicted under 72062 even if the husband didn't know anything about the false numbers that she was providing him from the restaurant that they were operating. So if there are no further questions, I would urge the Court to affirm the court of appeals. Roberts. Thank you, counsel. Mr. Whalen, you have 8 minutes remaining. My colleague mentioned the Ehrman case, which is in our brief, but I failed to get to it, but it's a very important case decided by this Court, which said that filing a false statement is not, is not indicative, not evidence of an intent to deceive. Similarly, the Harry Bridges case is also decided by this Court, said that, and the seeking a false statement about Mr. Bridges' involvement with the Communist Party does not evidence fraud. In these cases, I believe by this Court, control the issue that deceit or fraud is not an essential element of this crime of conviction. Following up what Justice Kagan has said, or has asked, that the rules, canons of construction that the Petitioner has invoked, the rules of superfluity, against superfluity, the idea that a court must give cognizance to different words, mean different things, that is, revenue loss from the government is different from revenue loss to victims, and the specific versus the general. The answer of the government is simply speculation and conjecture of, among other things,  In this case, courts make the wrong decisions. Congress didn't understand that tax evasion does involve fraud, and therefore, it will be superfluous. The position of the government in this case is simply that tax evasion may not be in M-2, the reason that, rather, that fraud and deceit may not be in tax evasion, but that a lesser I would like to remind the Court, as many of the Justices have indicated, that we're not looking at an idea of someone who suffers a penalty as a result of a tax offense. We are talking about banishment, and we're talking about deportation, and the statute in which we're involved should be read in favor, where the Congress has not been clear, the statute should be read in favor of the immigrant. Although it's not a criminal statute. Pardon me, Your Honor? It's not a criminal statute. This Court, in the Fong case, said that the rule of lenity applies to an immigration case. And the holdings of this Court have been consistent that the rule of lenity applies to both criminal cases as well as immigration cases. And I invite the Court to look at the cases we have cited that the rule of lenity has applied, in fact, to immigration cases. There's one technical feature, too, that I also didn't understand. The particular tax year in question, the failure to report was $76-some-thousand. But the number that we're given for the total failure to report is over a million. And the loss to the IRS is $245,000. Well, the $245,000 loss must refer to more than the failure to report $76,000. The threshold amount is not an issue in the case. I'd just like to know how we got the $245,000 revenue loss was calculated, given that the crime that was charged, the failure was to report only $76,000. I don't know. It was in negotiations between the government and the Kawashimas. In any compromise, the government chose only to charge them with a crime under 7206, which — and to settle on that basis. As Justice Alito has mentioned in the Padilla case quite emphatically, that attorneys representing immigrants deal with the government in order to avoid deportation. And that, in this case, whether the Kawashimas, in fact, had filed false returns and attempted to cede, that was by the boards because the government and the taxpayer agreed that their offense would be solely 7206, which, as you read the elements — and you can read the Justice Department handbook, which tells you what the elements are, and it does not include fraud and deceit. If there are no further questions, I would — finally, I would like to mention one case which hasn't been brought up, which evolved from the questions by the Justices, and that is a Third Circuit case, which we cited, Nugent, mentioned in response to Justice Breyer's question that the Nugent case said that you must fulfill both elements — that is, perjury, S under the statute, and if it's included in fraud and deceit, you must fulfill the elements of both crimes at issue. And, of course, in this case, the Kawashimas did not — were imprisoned for four months and did not meet the statutory requirement for an aggravated felony of one year. But in any event, I want — I would like the Court to keep in mind that what we are dealing here with is perjury, and we're not dealing with fraud or deceit as agreed to by the government and the taxpayer. And that, I should suggest to the Court, should be dispositive of the decision in this case. Roberts. Thank you, counsel. The case is submitted.